UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAZMIN FRANKS | ) |
| | ) |
| Plaintiff, | ) |
| | ) Cause# 4:19-cv-2663-RWS |
| v. | ) |
| | ) |
| CITY OF SAINT LOUIS, MISSOURI, | ) |
| COL. JOHN HAYDEN, in his | ) |
| Individual, and | ) |
| OFFICER WILLIAM | ) |
| OLSTEN, in his individual capacity. | ) |
| | ) |
| Defendants. | ) |

### DEFENDANT/CROSS-CLAIMANT WILLIAM OLSTEN'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant/Cross-claimant William Olsten (referred to herein as "Olsten"), and in support of his Motion for Summary Judgment, states as follows:

### I.    INTRODUCTION

Plaintiff brings claims against Olsten pursuant to 42 U.S.C. § 1983 for alleged violations of the First, Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff further asserts a state law claim for battery.

Olsten filed his cross-claim against the City of St. Louis (hereinafter "City") seeking defense and indemnification from the City.

### II.    FACTS

On the evening of September 29, 2017, Plaintiff and others gathered near Busch Stadium to protest the acquittal of police officer Jason Stockley who had been charged with first-degree murder. **Olsten SUF 1-5.**

Olsten was a police officer with the St. Louis Metropolitan Police Department (hereinafter "SLMPD") and was on duty that evening. **Olsten SUF 7.** Around 9:00 p.m., a large group of

1

protesters marched south on Broadway in downtown St. Louis and arrived at the intersection of Broadway and Walnut. **Olsten SUF 8.** Olsten, his supervisor, Sgt. Eric Bartlett, and approximately 10 other detectives under Bartlett's supervision were assigned to the area of Broadway and Walnut. **Olsten SUF 9.** SLMPD Police Commissioner John Hayden, then a Major, was the scene commander, the highest-ranking officer on the scene. **Olsten SUF 9.**

As police were waving traffic east on Walnut, a protest participant identified as Reverend Darryl Gray, assaulted a police officer, knocking him to the ground. **Olsten SUF 13.** Reverend Gray was taken to the ground by a police officer and taken into custody. **Olsten SUF 14.** As police proceeded to take Reverend Gray into custody, another protester identified as Calvin Kennedy aka "Cap", punched an officer participating in the Gray arrest. **Olsten SUF 15.** Officers then attempted to arrest Mr. Kennedy, who resisted, running south on Broadway away from the Walnut intersection where police tasered him and took him into custody. **Olsten SUF 16.** As officers took Mr. Kennedy into custody, numerous protesters, including Plaintiff, who cleared Walnut and who had been marching south on Broadway away from Walnut, hurried back towards the intersection and the officers' position. **Olsten SUF 18.**

The protesters were angry over the arrests and began yelling and screaming at the police officers, including Olsten who was assisting in taking Mr. Kennedy to a secure location on Walnut. **Olsten SUF 19.** Olsten had his mace fogger canister in his right hand clearly visible to the crowd of protesters who were following him. **Olsten SUF 20.** As more protesters hurried back to Broadway and Walnut, Commissioner Hayden described the protesters as hostile and combative and he was concerned about officer safety. **Olsten SUF 21.** Commissioner Hayden further described the scene as a very hot flashpoint for violence and radioed for additional assistance. **Olsten SUF 22.** Protesters then began surrounding the officers with some getting to within feet of them. **Olsten SUF 23**. It was not a peaceful protest at this point. **Olsten SUF 24.**

Olsten and other officers gave numerous commands to the protesters, including Plaintiff, to "get back". **Olsten SUF 25.** Eight such commands to "get back" can be heard on the Maverick video in the 54 seconds between Cap's arrest and Olsten deploying pepper mace. **Olsten SUF 26.** One protester, Amir Brandy, became extremely angry and hostile calling Olsten a "p--sy a-s white boy" and further repeatedly threatening to "f-ck you up". **Olsten SUF 27.** Plaintiff was in the crowd in proximity to Amir Brandy as he threatened Olsten. **Olsten SUF 28.**

Protesters continued to converge on the area, moving towards the officers. **Olsten SUF 30.** Olsten once again calmly told Brandy "Dude, back up". **Olsten SUF 31.**

Brandy refused Olsten's command and continued to come forward in a threatening manner. **Olsten SUF 32.** Sgt. Bartlett, who was standing within arms-length of Olsten, feared he and the other officers were about to be overrun. **Olsten SUF 33**. As Olsten scanned to his left, other protesters were closing in on his right, including a female who yelled "shoot these motherf-ckers ……." (sounds like "back" but is not totally clear). **Olsten SUF 34.**

Immediately thereafter, Olsten looked to his right and deployed his hand-held pepper mace fogger in an effort to stop the threat of Brandy and to disperse the rest of the crowd who had ignored the officers' numerous orders to "get back". **Olsten SUF 35.** Plaintiff was near Brandy when Olsten deployed his pepper mace. **Olsten SUF 36.** Sgt. Bartlett believed he and the other officers were about to be physically harmed. **Olsten SUF 37.** Had Olsten not deployed his pepper mace to disburse the crowd, Sgt. Bartlett would have. **Olsten SUF 38.**

**SLMPD USE OF FORCE POLICY**

SLMPD Special Order 1-01 (hereinafter "SO 1-01") contains the SLMPD's policy in the use of non-deadly force and was in effect on September 29, 2017. **Olsten SUF 41.** Pepper mace is considered non-deadly force. **Olsten SUF 44.** Pepper mace is provided for use when force is necessary to control belligerent, uncooperative persons for whom verbal controls are ineffective.

3

The product is designed to be used as an alternative to physical contact between and officer and person(s) involved.  **Olsten SUF 46.**

For protests, officers are issued pepper mace contained in a fogger canister which are designed to control large, unruly crowds.  **Olsten SUF 52.**  Mace from a fogger canister disperses a broader stream, more like fog so that it more effectively impacts large crowds. **Olsten SUF 53.** Officers were not required to give any warnings or verbal commands prior to deploying pepper mace.  **Olsten SUF 54.**  Officers have individual discretion on whether or not to deploy hand-held pepper mace.  **Olsten SUF 59.**

### ADDITIONAL FACTS RELAVENT TO OLSTEN'S CROSS-CLAIM AGAINST THE CITY

Commissioner Hayden testified that if he believed one of his officers committed an assault, he would have called the Internal Affairs Division and they would have responded to the scene that night.  **Olsten SUF 62.**  Commissioner Hayden did not call the Internal Affairs Division because he did not have reason to believe Olsten committed an assault by deploying his pepper mace.  **Olsten SUF 63-64.**  As scene commander, Commissioner Hayden had authority and in fact, an obligation to create an Employee Misconduct Report (hereinafter "EMR") if he believed Olsten committed a department policy violation.  **Olsten SUF 65.**  Commissioner Hayden did not create an EMR in connection with Olsten's deployment of pepper mace on September 29, 2017 nor did he ever talk to Olsten about it.  **Olsten SUF 66-67.**  Moreover, no officer serving under Commissioner Hayden reported to him that they believed Olsten committed an assault or a policy violation in connection with his actions.  **Olsten SUF 68.**  The Internal Affairs Division never questioned Olsten about his actions the night of September 29, 2017.  **Olsten SUF 69.**

Pursuant to City of St. Louis Ordinance §3.10.040(H), the City is obligated to defend its police officer employees from claims asserted in connection with their acts while on duty.  **Olsten SUF 70.**  St. Louis Metropolitan Police Department Special Order 3-05, §XXII(A) provides in part

4

that upon request the SLMPD may provide legal representation and indemnification for an employee who is named as a defendant in a civil action.  **Olsten SUF 71.**  There are two factors the City weighs to determine if defense and indemnification will be provided:

    a.    The employee's actions must have been taken in the scope and course of his/her employment; and

        1.    Acts are within the "scope and course of employment" if a) they were part of the work the employee was employed to perform; and b) they were done by the employee to serve the business or interests of the Department.

    2.    The employee's actions must have been substantially consistent with the law and with the SLMPD's internal policies.  Whether or not criminal charges have been filed is taken into consideration under this factor.

**Olsten SUF 72.**

On July 16, 2019 the St. Louis City Circuit Attorney's Office filed a Complaint against Olsten in *State v. Olsten*, 22nd Cir. No. 1922-CR02199, alleging he assaulted Plaintiff and other individuals by spraying them with pepper spray on September 29, 2017.  The alleged conduct arose out of the same allegations contained in Plaintiff's Second Amended Complaint.  **Olsten SUF 74**.

On May 28, 2021, the Court in the referenced criminal case entered its Judgment finding Olsten not guilty on all counts.  **Olsten SUF 74**.  On August 28, 2021, 590.502 RSMo (aka "Law Enforcement Officer's Bill of Rights") became law.  Section 7 provides:

> "Employers shall defend and indemnify law enforcement officers from and against civil claims made against them in their official and individual capacities if the alleged conduct arose in the course and scope of their obligations and duties as law enforcement officers.  This includes any actions taken off duty if such actions were taken under color of law.  In the event the law enforcement officer is convicted of, or pleads guilty to, criminal charges arising out of the same conduct, the employer shall no longer be obligated to defend and indemnify the officer in connection with related civil claims."

**Olsten SUF 75.**

Olsten has been acquitted of all charges alleged in connection with his conduct.  **Olsten SUF 76**.  The City has admitted Olsten's actions were reasonable and not excessive given the threatening nature of Brandy's comments as well as the quickly deteriorating situation.  **Olsten**

5

**SUF 77.** On August 10, 2021, Olsten sent a letter to Defendant Hayden enclosing the Judgement and setting out the defense and indemnity provision in RSMo. 590.502(7). Olsten's letter reasserted his demand for defense and indemnity. **Olsten SUF 78**. To date, Olsten has incurred attorneys' fees and expenses in the amount of $4,600.00. **Olsten SUF 81.**

### III.     LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis of his motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which he believes demonstrates the absence of a genuine issue of material fact. *Id*. at 323.

After a motion for summary judgment is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. *Id*. at 324. "In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden 'to designate specific facts creating a triable controversy.'" *Crossley v. Georgia-Pacific Corp*., 355 F.3d 1112, 1113 (8th Cir. 2004) citing *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999).

The nonmoving party must substantiate his allegations with "sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal citation omitted).

IV.        ARGUMENT

    a. **Constitutional Requirements Concerning the Use of Force**

The Supreme Court has repeatedly stressed that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) citing *Graham v. Connor*, 490 U. S. 386, 396 (1989). And "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Kisela*, 138 S. Ct. at 1152 citing *Graham*, 490 U.S. at 396-397.

Thus, the question whether an officer has used excessive force "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "Once the predicate facts are established, the reasonableness of [an officer's] conduct under the circumstances is a question of law." *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir. 2001).

    b. **Qualified Immunity**

The doctrine of qualified immunity shields government officials from civil liability so long as their conduct does not violate a clearly established constitutional or statutory right of which a reasonable person would have known. *City of Tahlequah, OK v. Bond,* 595 U.S.___ (2021); *Rogers v. King*, 885 F.3d 1118, 1121 (8th Cir. 2018) citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This affords officers "breathing room to make reasonable, but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law". *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011).

7

A government official is thus "entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the plaintiff, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of violation." *Rogers*, 885 F.3d at 1121 citing *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012). Because this case concerns the defense of qualified immunity, however, the Court should only consider the facts that were knowable to the officers. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) citing *United States v. Lanier*, 520 U. S. 259, 271, (1997).

It is a "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White*, 137 S. Ct. at 552 citing *al-Kidd,* 563 U.S. at 742. Existing precedent must place the constitutional question "beyond debate". *al-Kidd,* 563 U.S. at 742. The Supreme Court explained decades ago that the clearly established law must be "particularized" to the facts of the case. *White,* 137 S. Ct. at 552 citing *Anderson v. Creighton*, 483 U. S. 635, 640 (1987). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id*. at 552 citing *Anderson*, 483 U. S. at 639.

"Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Kisela*, 138 S. Ct. at 1152 citing *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam). "Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela*, 138 S. Ct. at 1153 citing *Mullenix*, 136 S. Ct. at 309 (internal quotation marks omitted and emphasis deleted).

The plaintiff bears the burden of proving that the law was clearly established. *Hess v.*

8

*Ables*, 714 F.3d 1048, 1051 (8th Cir. 2013).

Olsten is entitled to qualified immunity on plaintiff's § 1983 claim because Plaintiff cannot identify a case where an officer acting in "similar circumstances" as Olsten was held to have violated the Fourth Amendment. *White*, 137 S. Ct. at 552. Pursuant to the recent Supreme Court decision in *White v. Pauly*, Plaintiff must identify another case in which an officer who used pepper spray in a similar situation was found to have violated a plaintiff's Constitutional rights. 137 S. Ct. at 552.  Plaintiff will be unable to do so and therefore cannot meet his burden.

Olsten is entitled to qualified immunity "unless existing precedent 'squarely governs' the specific facts at issue" in this case. *Kisela*, 138 S. Ct. at 1153 citing *Mullenix*, 136 S. Ct. at 309. Here, the record viewed in the light most favorable to Plaintiff establishes Plaintiff was with a large group of protesters angry at officers for arresting several other protesters.  **Olsten SUF 19.**  Olsten and other officers gave numerous commands to the protesters, including Plaintiff, to "get back". **Olsten SUF 25-26.**   Plaintiff was in the vicinity of Amir Brandy who was yelling and threating Olsten that he would "f-ck him up". **Olsten SUF 27-28, and 36.**  Sgt. Bartlett, who was standing within arms-length of Olsten, feared he and the other officers were about to be overrun.  **Olsten SUF 33**. Sgt. Bartlett further believed he and the other officers were about to be physically harmed (**Olsten SUF 36**) and testified at Olsten's criminal trial that had Olsten not deployed his pepper mace to disburse the crowd, he would have.  **Olsten SUF 37.**

No case decided prior to September 29, 2017 would have put Olsten on notice that using pepper spray in these circumstances would have violated Plaintiff's Constitutional rights. Olsten is therefore entitled to qualified immunity on Plaintiff's claims under § 1983 because he did not violate an established constitutional right of which a reasonable person would have known.

   **c. Olsten is entitled to official immunity on all state law claims because the undisputed record shows that Olsten used no more force against Plaintiff and those he was near than was reasonably necessary.**

9

Plaintiff asserts that Olsten is liable for the state common law cause of action of battery. **Docket Entry 1, ¶¶ 132-140**. This Court should find that Olsten is entitled to official immunity on Plaintiff's state law claim because he acted reasonably and used no more force than necessary to abate the threat posed by Plaintiff and those near him.

"Under Missouri law, the doctrine of official immunity protects public officials from civil liability for injuries arising out of their discretionary acts or omissions performed in the exercise of their official duties." *McLean v. Gordon*, 548 F.3d 613, 617 (8th Cir. 2008); see also *Kanagawa v. State*, 685 S.W.2d 831, 835 (Mo. banc 1985). Discretionary acts require "the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or pursued." *Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. 1984) quoting *Jackson v. Wilson*, 581 S.W.2d 39, 43 (Mo. Ct. App. 1979). The investigation of a crime is a discretionary act, not a ministerial one. *Reasonover v. St. Louis City*, 447 F.3d 569, 585 (8th Cir. 2006) citing *Beaver v. Gosney*, 825 S.W.2d 870, 874 (Mo. Ct. App. 1992). Arresting and using force also is discretionary. See *Blue v. Harrah's N. Kan. City, LLC*, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005) ("Deciding whether or not to arrest someone is a matter of discretion—the officer must decide what course should be pursued based on the circumstances at hand.").

Official immunity does not apply to those discretionary acts done in bad faith or with malice. *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. banc 1986). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Id.* at 447 (internal citation omitted). "Bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence.

It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id*. (internal citation omitted).

A district court's grant of summary judgment on official immunity grounds will be affirmed when a plaintiff does not present "specific evidence of bad faith" or malice. *White v. Jackson*, 865 F.3d 1064, 1076 (8th Cir. 2017) citing *Reasonover v. St. Louis Cty.*, 447 F.3d 569, 585-86 (8th Cir. 2006); See also *Stephens v. Dunne*, 453 S.W. 241, 250 (Mo. App. 2014) (bare allegations of malice, without more, are not sufficient to satisfy the bad-faith exception to official immunity). Moreover, a police officer making an arrest is "answerable in damages as for assault and battery only when...he uses more force than is reasonably necessary." *Hendricks v. City of Bella Villa*, 2010 U.S. Dist. LEXIS 77483 at *16 (Mo. E.D. Aug. 2, 2010) citing *Neal v. Helbling*, 726 S.W.2d 483, 487 (Mo. App. E.D. 1987).

Here, the undisputed record establishes that Olsten's use of pepper spray against Plaintiff was a discretionary act and was objectively reasonable. Plaintiff, moreover, cannot set forth specific evidence suggesting that Olsten acted in bad faith or was motivated by malice when he deployed pepper mace. *Reasonover*, 447 F.3d at 585-86l *Twiehaus*, 706 S.W.2d at 446. For this reason, official immunity shields Olsten from Plaintiff's state law claim.

### d. Olsten is entitled to future defense, indemnification and reimbursement of his accrued attorneys' fees and expenses from the City

City of St. Louis Ordinance §3.10.040(H), **Olsten SUF 70**, provides in part that it "shall be the duty of the City Counselor" to defend "all actions against any officer or servant or agent of the City….. on account of his acts…." The ordinance does not give the City Counselor's office discretion to choose which City employees it defends or does not defend.

SLMPD 3-05, §XXII(A) provides in part that upon request the SLMPD may provide legal representation and indemnification for an employee who is named as a defendant in a civil action.

11

The first factor the City considers is whether the employee's actions were taken in the scope and course of his/her employment. Acts are within the course and scope of employment if they were part of the work the employee was employed to perform and they were done by the employee to serve the business or interest of the Department. Both factors are present here. Olsten and his unit were assigned to assist with the protest on the evening of September 29, 2017. During the incident, Olsten was performing police functions, i.e. assisting with the arrest of Reverend Darryl Gray and Clavin Kennedy and then by attempting to keep the angry, hostile crowd of protesters under control and to prevent violence. Olsten's actions were taken in the interest of the City who has an interest in keeping the peace and citizens safe.

The employee's actions must also have been substantially consistent with the law and with the SLMPD's internal policies. First and foremost, the City has admitted that under the circumstances, Olsten's actions were reasonable. **Olsten SUF 77.** Second, the record overwhelmingly proves Olsten's conduct was reasonable, lawful and consistent with SLMPD internal policies. This is evidenced by the fact that Olsten was never accused of violating any internal SLMPD policy, nor was there ever even an internal investigation into his conduct despite the fact that Commissioner Hayden was at the scene and witnessed the incident. **Olsten SUF 65-69.**

Under the policy, whether criminal charges have been filed against the employee is taken into consideration when determining whether Olsten's actions were lawful. Basing any part of the decision of whether to defend and indemnify on the charging determinations of the current Circuit Attorney for the City of St. Louis is unfair and unfortunate, as these decisions are susceptible to political influence. However, even it was a consideration, Olsten was acquitted of the charges on May 28, 2021 and the City still refuses to defend and indemnify Olsten in this matter, despite acknowledging his actions were reasonable. **Olsten SUF 77.**

If the City believes the charges in and of themselves created a conflict of interest which prevented the City Counselor's office from defending Olsten, the City had a duty to engage outside counsel for him. Moreover, any conflict that arguably arose because of the criminal charges, no longer existed after Olsten was acquitted.

In addition to the City's own admission, ordinance and policy, 590.502(7) RSMo. provides:

"Employers shall defend and indemnify law enforcement officers from and against civil claims made against them in their official and individual capacities if the alleged conduct arose in the course and scope of their obligations and duties as law enforcement officers. This includes any actions taken off duty if such actions were taken under color of law. In the event the law enforcement officer is convicted of, or pleads guilty to, criminal charges arising out of the same conduct, the employer shall no longer be obligated to defend and indemnify the officer in connection with related civil claims."

On August 10, 2021, Olsten sent a letter to Commissioner Hayden enclosing the Judgment acquitting him of the criminal charges and setting out the defense and indemnity provision in RSMo. 590.502(7). **Olsten SUF 78.** Olsten's letter reasserted his demand for defense and indemnity. The City did not respond.

Despite all of these facts and circumstances, the City continues its refusal to defend and indemnify Olsten. This refusal has and will continue to cause great financial hardship and harm to Olsten. Olsten has accrued $4,600.00 in attorneys' fees to date in this litigation. **Olsten SUF 79.** It is unconscionable that the City, who required Olsten to work the protest on September 29, 2017, and who did not conclude he violated any law or internal policy, has abandoned him in this manner.

## CONCLUSION

Olsten is entitled to qualified immunity on Plaintiff's § 1983 claims for two reasons. First, the facts construed in the light most favorable to Plaintiff do not establish a violation of a constitutional right because Olsten had probable cause to believe that Plaintiff and those near him posed a threat. Second, it was not clearly established on September 29, 2017 that the use pepper mace to control a large, angry, belligerent, uncooperative, hostile and combative crowd of protesters who surrounded Officer Olsten and threatened him was a violation of the Constitution of the United States.

Olsten is entitled to official immunity on Plaintiff's state law claim because the

13

undisputed record established he used no more force than reasonably necessary under the circumstances.

Finally, pursuant to the City's own ordinance and policy, as well as RSMo. 590.502(7), Olsten is entitled to defense and indemnity from the City of St. Louis and is entitled to reimbursement of attorneys' fees and expenses incurred to date.

Respectfully submitted,

MILLIKAN LAW OFFICE, LLC

By:   /s/ Brian P. Millikan
      Brian P. Millikan, #50900MO
      12180 Old Big Bend Road
      Kirkwood Missouri 63122
      (314) 621-0622 (Telephone)
      (866) 640-0289 (Telefacsimile)
      bmillikan@millikanlaw.com
      Attorney for Defendant William Olsten

## CERTIFICATE OF SERVICE

Certificate of Service Signature of the foregoing is also certification that the foregoing was filed electronically with the Clerk of the United States District Court for the Eastern District of Missouri to be served by operation of the electronic filing system upon the counsel of record, this 10th day of December, 2021.

_/s/  Brian P. Millikan_____

Case: 4:19-cv-02663-RWS   Doc. #: 59   Filed: 12/10/21   Page: 15 of 15 PageID #: 700