# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JAZMIN FRANKS | ) |
| | ) |
| Plaintiff, | ) |
| | ) Cause# 4:19-cv-2663-RWS |
| v. | ) |
| | ) |
| CITY OF SAINT LOUIS, MISSOURI, | ) |
| COL. JOHN HAYDEN, in his | ) |
| Individual, and | ) |
| OFFICER WILLIAM | ) |
| OLSTEN, in his individual capacity. | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT/CROSS-CLAIMANT WILLIAM OLSTEN'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant William Olsten (hereinafter "Olsten"), by and through council, and for his Statement of Uncontroverted Material Facts, states as follows:

1. On September 15, 2017, Officer Jason Stockley was acquitted of first-degree murder. **Plaintiff's Complaint, Docket Entry 1, ¶ 13.**

2. Following the announcement of the verdict, protests began at multiple locations in St. Louis. **Plaintiff's Complaint, Docket Entry 1, ¶ 19.**

3. In an effort to allow protesters to express their First Amendment Rights, police routinely block streets off during protests. **Olsten Exh. B, Hayden civil depo pg. 29, line 25 and pg. 30, lines 1-3.**

4. During the Stockley protests, numerous officers within the St. Louis Metropolitan Police Department (hereinafter "SLMPD") were injured, some so seriously injured they were

unable return to full duty. **Olsten Exh. C, Hayden criminal depo pg. 30, lines 11-25 and pg. 31, lines 1-16.**

5. On September 29, 2017, at around 7:00 p.m., individuals began protesting in and around Busch Stadium in downtown St. Louis as a St. Louis Cardinals game took place inside the stadium. **Plaintiff's Complaint, Docket Entry 1**, ¶ 38; **Olsten Exh. D, Aldridge depo pg. 47, lines 9-10 and 21-22.**

6. Police Commissioner John Hayden, then a Major, was the scene commander, the highest-ranking officer on the scene. **Olsten Exh. C, Hayden criminal depo pg. 35, lines 15-25.**

7. Olsten was employed as a police officer with the SLMPD and was on duty that evening. **Plaintiff's Complaint, Docket Entry 1, ¶ 11.**

8. Around 9:00 p.m., a large group of protesters marched south on Broadway in downtown St. Louis and arrived at the intersection of Broadway and Walnut. **Plaintiff's Complaint, Docket Entry 1, ¶ 44; Olsten Exh. C, Hayden criminal depo pg. 38, lines 24-25 and pg. 39, line 1 and 8; Olsten Exh. D, Aldridge depo pg. 56, lines 7-8.**

9. Olsten, his supervisor, Sgt. Eric Bartlett, and approximately ten other detectives under Bartlett's supervision were assigned to the area of Broadway and Walnut. **Olsten Exh. A, Bartlett trial testimony pg. 85, lines 3-7; Olsten Exh. E, Olsten depo pg. 59, lines 1-4.**

10. Sgt. Bartlett was a 28-year veteran of the SLMPD at the time of this incident. **Olsten Exh. A, Bartlett trial testimony pg. 81, lines 17-21.**

11. On the night of September 29, 2017, Officers blocked Broadway off to vehicle traffic to allow protesters to travel south towards Busch Stadium. **Olsten Exh. B, Hayden civil**

depo pg. 30, lines 4-11; Olsten Exh. C, Hayden criminal depo pg. 39, lines 21-25 and pg. 40, lines 1-4.**

12. As the protest line began to thin out, the police officers stopped the remaining protesters, to allow backed up vehicle traffic to proceed east on Walnut across Broadway. **Olsten Exh. F, Maverick video 00:09-00:00:30.**

13. As police were waving traffic east on Walnut, a protest participant identified as Reverend Darryl Gray, assaulted a police officer, knocking him to the ground. **Olsten Exh. A, Bartlett trial testimony pg. 86, lines 16-25 and pg. 87, lines 1-5.**

14. Reverend Gray was taken to the ground by a police officer and taken into custody. **Olsten Exh. F, Maverick video 00:31-00-00:39.**

15. As police proceeded to take Reverend Gray into custody, another protester identified as Calvin Kennedy aka "Cap", punched an officer participating in the Gray arrest. **Olsten Exh. A, Bartlett trial testimony pg. 87, lines 11-16.**

16. Officers then attempted to arrest Mr. Kennedy, who resisted, running south on Broadway away from the Walnut intersection where police tasered him and took him into custody. **Olsten Exh. F, Maverick video 00:39-01:13; Olsten Exh. G, SLMPD Real Time Crime Center (hereinafter "RTCC") video 9:37:08-9:38:40.**

17. Olsten was not initially involved in the arrest of either suspect. **Olsten Exh. A, Bartlett trial testimony pg. 88, lines 22-25.**

18. As officers took Mr. Kennedy into custody, numerous protesters, including Plaintiff, who cleared Walnut and who had been marching south on Broadway away from Walnut, hurried back towards the intersection and the officers' position. **Olsten Exh. G, RTCC**

video 9:38:40-9:39:40; Olsten Exh. H, De Mian video 00:22-01:25; Olsten Exh. A, Bartlett trial testimony pg. 88, lines 2-5.**

19. The protesters were angry over the arrests and began yelling and screaming at the police officers, including Olsten who was assisting in taking Mr. Kennedy to a secure location on Walnut. **Olsten Exh. F, Maverick video 01:00-01:56.**

20. Olsten had his mace fogger canister in his right hand clearly visible to the crowd of protesters. **Olsten Exh. F, Maverick video 01:16-01:40.**

21. As more protesters hurried back to Broadway and Walnut, Commissioner Hayden described the protesters as hostile and combative and he was concerned about officer safety. **Olsten Exh. C, Hayden criminal depo pg. 49, lines 1-10.**

22. Commissioner Hayden further described the scene as a very hot flashpoint for violence and radioed for additional assistance. **Olsten Exh. B, Hayden civil depo pg. 43, lines 23-25, pg. 44 lines 1-4 and pg. 45, lines 1-6.**

23. Protesters then began surrounding the officers with some getting to within feet of them. **Olsten Exh. F, Maverick video 01:30-01:56; Olsten Exh. A, Bartlett trial testimony pg. 91, lines 1-2**.

24. It was not a peaceful protest at this point. **Olsten Exh. C, Hayden criminal depo pg. 50 line 25 and pg. 51, lines 1-3.**

25. Olsten and other officers gave numerous commands to the protesters, including Plaintiff, to "get back". **Olsten Exh. A, Bartlett trial testimony pg. 88, lines 8-9.**

26. Eight such commands to "get back" can be heard on the Maverick video in the 54 seconds between Cap's arrest and Olsten deploying pepper mace. **Olsten Exh. F, Maverick video 01:02, 01:04, 01:17, 01:18, 01:19, 01:20, 01:34 and 1:45.**

27. One protester, Amir Brandy, became extremely angry and hostile calling Olsten a "p--sy a-s white boy" and further repeatedly threatening to "f-ck you up". **Olsten Exh. F, Maverick video 01:25-01:55.**

28. Plaintiff was in the crowd in proximity to Amir Brandy as he threatened Olsten. **Olsten Exh. F, Maverick video 01:49.**

29. Olsten told Brandy to "come f-ck me up then". **Maverick video 01:27.**

30. Protesters continued to converge on the area, moving towards the officers. **Olsten Exh. G, RTCC video 9:38:40-9:39:40; Olsten Exh. A, Bartlett trial testimony pg. 88, lines 20-21**; **Olsten Exh. E, Olsten depo pg. 75, lines 6-9.**

31. Olsten once again calmly told Brandy "Dude, back up". **Olsten Exh. F, Maverick video 01:45; Olsten Exh. A, Bartlett trial testimony pg. 92, lines 1-3.**

32. Brandy refused Olsten's command and continued to come forward in a threatening manner. **Olsten Exh. A, Bartlett trial testimony pg. 92, lines 11-12; Olsten Exh. E, Olsten depo pg. 73, lines 6-11, 19-22.**

33. Sgt. Bartlett, who was standing within arms-length of Olsten, feared he and the other officers were about to be overrun. **Olsten Exh. A, Bartlett trial testimony pg. 89, lines 17-22; pg. 92, lines 4-7**.

34. As Olsten scanned to his left, other protesters were closing in on his right, including a female who yelled "shoot these motherf-ckers ……." (sounds like "back" but is not totally clear). **Olsten Exh. F, Maverick video 01:54-01:56.**

35. Immediately thereafter, Olsten looked to his right and deployed his hand-held pepper mace fogger in an effort to stop the threat of Brandy and to disperse the rest of the crowd

who had ignored the officers' numerous orders to "get back". **Olsten Exh. F, Maverick video 01:56; Olsten Exh. E, Olsten depo pg. 71, lines 6-11, 19-24 and pg. 72, lines 16-19, 22-25.**

36. Plaintiff was near Brandy when Olsten deployed his pepper mace. **Plaintiff's Complaint, Docket Entry 1, ¶ 61.**

37. Sgt. Bartlett believed he and the other officers were about to be physically harmed. **Olsten Exh. A, Bartlett trial testimony pg. 94, line 25 and pg. 95, lines 1-3.**

38. Had Olsten not deployed his pepper mace to disburse the crowd, Sgt. Bartlett would have. **Olsten Exh. A, Bartlett trial testimony pg. 96, lines 2-3.**

39. Due to the large and hostile nature of the crowd, Sgt. Bartlett determined it was not safe or practical to make further arrests. **Olsten Exh. A, Bartlett trial testimony pg. 92, lines 22-25 and pg. 93, lines 1-9.**

40. A bottle of water was thrown from the protesters and hit Olsten in the right leg. **Olsten Exh. G, RTCC video 9:39:25-9:39:27; Olsten Exh. E, Olsten depo pg. 75, lines 1-3.**

41. SLMPD Special Order 1-01 (hereinafter "SO 1-01") contains the SLMPD's policy in the use of non-deadly force. A genuine and authentic copy of the relevant portions of SO 1-01 is attached hereto as **Olsten Exh. I.**

42. SO 1-01 was issued on August 31, 2017 and was in effect on September 29, 2017. **Olsten Exh. B, Hayden civil depo pg. 113, lines 12-19 and pg. 114, lines 7-11.**

43. Pursuant to SO 1-01 III(B), SLMPD officers may use non-deadly force for the resolution of incidents, as follows:

      a)     To protect themselves or others from physical harm;
      b)     To restrain or subdue a resistant individual; or
      c)     To bring any unlawful situation safely and effectively under control

**Olsten Exh. I, SO 1-01 §III(B).**

44. Pepper mace is considered non-deadly force. **Olsten Exh. I, SO 1-01 §III(A); Olsten Exh. C, Hayden criminal depo pg. 16, lines 17-24.**

45. SO 1-01 §IV establishes procedures for the use of pepper mace. **Olsten Exh. I, SO 1-01 §IV.**

46. Pepper mace is provided for use when force is necessary to control belligerent, uncooperative persons for whom verbal controls are ineffective. The product is designed to be used as an alternative to physical contact between and officer and person(s) involved. **Olsten Exh. I, SO 1-01 §IV(A)(1).**

47. Yelling obscenities at officers is considered belligerent. **Olsten Exh. C, Hayden criminal depo pg. 21, lines 11-15.**

48. An officer may use pepper mace to effect a lawful arrest, or to otherwise control combative, uncooperative person(s), when verbal commands and persuasion have been ineffective in inducing cooperation. **Olsten Exh. I, SO 1-01 §IV(B)(1)(a); Olsten Exh. C, Hayden criminal depo pg. 20, lines 22-25 and pg. 21, lines 1-3.**

49. Officers are trained to spray directly into the face and eyes of a person in an effort to stop their progress. **Olsten Exh. I, SO 1-01 §IV(A)(2); Olsten Exh. C, Hayden criminal depo pg. 22, lines 17-25 and pg. 23, line 1.**

50. Officers are to make every effort to avoid unnecessarily exposing bystanders to pepper mace. **Olsten Exh. I, SO 1-01 §IV(B)(3).**

51. The protesters surrounding the officers during this incident were not innocent bystanders. **Olsten Exh. A, Bartlett trial testimony pg. 107, lines 7-18.**

52. For protests, officers are issued pepper mace contained in a fogger canister which are designed to control large, unruly crowds. **Olsten Exh. A, Bartlett trial testimony pg. 82, lines 22-25, pg. 83, lines 1-7.**

53. Mace from a fogger canister disperses a broader stream, more like fog so that it more effectively impacts large crowds. **Olsten Exh. A, Bartlett trial testimony pg. 83, lines 12-16.**

54. Officers were not required to arrest subjects who are pepper maced. **Olsten Exh. C, Hayden criminal depo pg. 25, lines 19-25.**

55. Officers were not required to arrest subjects who are unintentionally pepper maced. **Olsten Exh. C, Hayden criminal depo pg. 26, lines 1-5.**

56. Officers were not required to give any warnings prior to deploying pepper mace. **Olsten Exh. C, Hayden criminal depo pg. 26, lines 6-10.**

57. Officers were not required to give any verbal commands prior to deploying pepper mace. **Olsten Exh. C, Hayden criminal depo pg. 26, lines 14-19.**

58. The pepper mace effectively disbursed the crowd, prevented a physical altercation between the crowd and the officers, and safely and effectively brought the situation under control. **Olsten Exh. G, RTCC video 9:39:22-9:40:00; Olsten Exh. A, Bartlett trial testimony pg. 92, lines 14-21; pg. 95, lines 13-15.**

59. Police officers have discretion in determining whether or not to use force in a particular situation. **Olsten Exh. B, Hayden civil depo pg. 144, lines 15-19.**

60. If an officer decides to use force, he/she has the discretion to determine the type of force to use. **Olsten Exh. B, Hayden civil depo pg. 145, lines 2-5.**

61. Officers have individual discretion on whether or not to deploy hand-held pepper mace.  **Olsten Exh. C, Hayden criminal depo pg. 33, lines 18-22.**

62. If Commissioner Hayden believed one of his officers committed an assault, he would have called the Internal Affairs Division and they would have responded to the scene that night.  **Olsten Exh. C, Hayden criminal depo pg. 59, lines 8-17.**

63. Commissioner Hayden did not call the Internal Affairs Division on September 29, 2017.  **Olsten Exh. C, Hayden criminal depo pg. 59, lines 24-25 and pg. 60, line 1.**

64. Commissioner Hayden did not believe Olsten committed an assault by deploying his pepper mace that night.  **Olsten Exh. C, Hayden criminal depo pg. 60, lines 2-9.**

65. As scene commander, Commissioner Hayden had authority and in fact, an obligation to create an Employee Misconduct Report (hereinafter "EMR"), if he believed Olsten committed a department policy violation.  **Olsten Exh. C, Hayden criminal depo pg. 60, lines 10-15.**

66. Commissioner Hayden did not create an EMR in connection with Olsten's deployment of pepper mace on September 29, 2017.  **Olsten Exh. C, Hayden criminal depo pg. 60, lines 16-21.**

67. Commissioner Hayden never talked to Olsten about his actions.  **Olsten Exh. B, Hayden civil depo pg. 143, lines 17-25 and pg. 144, lines 1-4; Olsten Exh. E, Olsten depo pg. 107, lines 12-19.**

68. No officer serving under Commissioner Hayden reported to him that they believed Olsten committed an assault or a policy violation in connection with his actions.  **Olsten Exh. C, Hayden criminal depo pg. 61, lines 6-11.**

69. The Internal Affairs Division never questioned Olsten about his actions the night of September 29, 2017.  **Olsten Exh. E, Olsten depo pg. 18, lines 19-22 and pg. 19, lines 2-15 and 23-25.**

70. Pursuant to City of St. Louis Ordinance §3.10.040(H), the City is obligated to defend its police officer employees from claims asserted in connection with their acts while on duty.  A genuine and accurate copy of City of St. Louis Ordinance §3.10.040(H) is attached hereto as **Olsten Exhibit J.  See Docket Entry 54, ¶ 3 (City admitted to the truth and accuracy of the document).**

71. St. Louis Metropolitan Police Department Special Order 3-05, §XXII(A) provides in part that upon request the SLMPD may provide legal representation and indemnification for an employee who is named as a defendant in a civil action.  A true and accurate copy of Special Order 3-05, §XXII(A) is attached hereto as **Olsten Exhibit K.  See Docket Entry 54, ¶ 4 (City admitted to the truth and accuracy of the document).**

72. There are two factors the City weighs to determine if defense and indemnification will be provided:

   a. The employee's actions must have been taken in the scope and course of his/her employment;
   1. Acts are within the "scope and course of employment" if a) they were part of the work the employee was employed to perform; and b) they were done by the employee to serve the business or interests of the Department.

   b. The employee's actions must have been substantially consistent with the law and with the SLMPD's internal policies.  Whether or not criminal charges have been filed is taken into consideration under this factor.
   **Olsten Exhibit K, Special Order 3-05, §XXII(A).**

73. On July 16, 2019 the St. Louis City Circuit Attorney's Office filed a Complaint against Olsten in *State v. Olsten*, 22nd Cir. No. 1922-CR02199, alleging he assaulted individuals

in the crowd of protesters by spraying them with pepper spray on September 29, 2017. The alleged conduct arose out of the same allegations contained in Plaintiff's Complaint. A true and accurate copy of the Complaint is attached hereto as **Olsten Exhibit L**. **See Docket Entry 54, ¶ 11 (City admitted to the truth and accuracy of the document).**

74. On May 28, 2021, the Court in the referenced criminal case entered its Judgment finding Olsten not guilty on all counts. A true and accurate copy of the Judgment is attached hereto as **Olsten Exhibit M**. **See Docket Entry 112, ¶ 14 (City admitted to the truth and accuracy of the document).**

75. On August 28, 2021, 590.502 RSMo (aka "Law Enforcement Officer's Bill of Rights") became law. Section 7 provides:

> "Employers shall defend and indemnify law enforcement officers from and against civil claims made against them in their official and individual capacities if the alleged conduct arose in the course and scope of their obligations and duties as law enforcement officers. This includes any actions taken off duty if such actions were taken under color of law. In the event the law enforcement officer is convicted of, or pleads guilty to, criminal charges arising out of the same conduct, the employer shall no longer be obligated to defend and indemnify the officer in connection with related civil claims."

A genuine and authentic copy of 590.502 RSMo. is attached hereto as **Olsten Exhibit N**. **See Docket Entry 54, ¶ 15 (City admitted 590.502 RSMo. became law on August 28, 2021).**

76. Olsten has been acquitted of all charges alleged in connection with his conduct. **Olsten Exhibit M**. **Docket Entry 54, ¶ 17.**

**77.** The City has admitted Olsten's actions were reasonable and not excessive given the threatening nature of Brandy's comments as well as the quickly deteriorating situation. **Olsten Exhibit D, pg. 5, 9 and 11 of City Memorandum in Support of Motion for Summary Judgment in *Rasheen Aldridge v. City of St. Louis, et al.,* Case No. 4:18-CV-1677.**

78. On August 10, 2021, Olsten sent a letter to Commissioner Hayden enclosing the

Judgement (**Olsten Exhibit M**) and setting out the defense and indemnity provision in RSMo. 590.502(7). Olsten's letter reasserted his demand for defense and indemnity. A true and accurate copy of Olsten's letter is attached hereto as **Olsten Exhibit O**. **See Docket Entry 54, ¶ 20 (City admitted to the truth and accuracy of the document).**

79. To date, Olsten has incurred attorneys' fees and expenses in the amount of $4,600.00. A true and accurate copy of Millikan Law Office's fee statement along with Brian Millikan's Affidavit attesting to the authenticity of the statement and reasonableness of the charges are attached hereto collectively as **Olsten Exhibit P.**

Respectfully submitted,

MILLIKAN LAW OFFICE, LLC

By: */s/ Brian P. Millikan*
Brian P. Millikan, #50900MO
12180 Old Big Bend Road
Kirkwood Missouri 63122
(314) 621-0622 (Telephone)
(866) 640-0289 (Telefacsimile)
bmillikan@millikanlaw.com
Attorney for Defendant William Olsten

**CERTIFICATE OF SERVICE**

Certificate of Service Signature of the foregoing is also certification that the foregoing was filed electronically with the Clerk of the United States District Court for the Eastern District of Missouri to be served by operation of the electronic filing system upon the counsel of record, this 10th day of December, 2021.

_/s/ *Brian P. Millikan*_