UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JAZMIN FRANKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19 CV 2663 RWS |
| | ) | |
| CITY OF ST. LOUIS, MISSOURI, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This case arises out of a protest in St. Louis, Missouri.  The protest followed the acquittal in the criminal case of former St. Louis Metropolitan Police Department ("SLMPD") Officer Jason Stockley.  Plaintiff Jazmin Franks asserts claims under 42 U.S.C. § 1983 for alleged violations of her First and Fourth Amendment rights, as well as supplemental state law claims, against Defendant/Cross-Claimant William Olsten ("Officer Olsten"), Defendant John Hayden ("Commissioner Hayden"), and Defendant/Cross-Defendant City of St. Louis, Missouri (the "City") (collectively, "Defendants"), for their roles in Officer Olsten's use of pepper spray against her.[1] Officer Olsten asserts a crossclaim against the City for reimbursement of all

---

[1] At the time of the events giving rise to this lawsuit, Officer Olsten and Commissioner Hayden were on duty as members of the SLMPD.  Officer Olsten was a member of the SLMPD's special operations unit, and Commissioner Hayden was a Major.

expenses and attorneys' fees incurred by him in defending against Franks' claims and payment of any damages and costs awarded to Franks.

The case is before me on Defendants' motions for summary judgment.  [Docs. 58 & 62].  For the reasons discussed below, Defendants' motions will be granted in part and denied in part without prejudice.  The motions will be granted as to Franks' federal law claims in Counts I, II, IV, and V and denied without prejudice in all other respects.  Franks' federal law claims will be dismissed with prejudice.  I decline to exercise supplemental jurisdiction over the remaining claims in this case and, as a result, those claims will be dismissed without prejudice.

## BACKGROUND[2]

The Stockley verdict, which acquitted Officer Stockley of first-degree murder, was released on September 15, 2017.   [Doc. 60, Olsten's Statement of Uncontroverted Material Facts ("SUMF"), ¶ 1; Doc. 64, City & Hayden's SUMF, ¶ 1].  In response to the verdict, many people in St. Louis began to protest in various locations around the city.  [Olsten's SUMF at ¶ 2; City & Hayden's SUMF at ¶ 2].  The protests began on the day that the verdict was released and continued for more than a month.  [City & Hayden's SUMF at ¶¶ 3 & 13].  At times, the protests grew violent in nature and required a more significant response from the SLMPD.

---

[2] The information in this section is taken primarily from Defendants' statements of uncontroverted material facts and Franks' statements of additional uncontroverted material facts to the extent the facts are supported by admissible evidence are not specifically controverted by the opposing party as required by Local Rule 7-4.01(E).

[Olsten's SUMF at ¶ 4; City & Hayden's SUMF at ¶¶ 10–12, 17].  At other times, the protests were peaceful.  [City & Hayden's SUMF at ¶ 12].

On September 29, 2017, a protest took place in downtown St. Louis near Busch Stadium.  [Olsten's SUMF at ¶ 5; City & Hayden's SUMF at ¶ 14].  During the protest, officers from the SLMPD's special operations unit blocked off a road near the stadium to allow protestors to march in the street.  [Olsten's SUMF at ¶ 11; City & Hayden's SUMF at ¶ 19].  At one point, as a line of protestors began to thin, officers stopped the remaining protestors to allow vehicles to move through an intersection so backed up traffic could flow.  [Olsten's SUMF at ¶ 12; City & Hayden's SUMF at ¶¶ 20–21].  Altercations ensued shortly thereafter between officers and protestors, resulting in the use of a taser on one protestor and two arrests.  [Olsten's SUMF at ¶¶ 13–16; City & Hayden's SUMF at ¶¶ 22–23].

Officer Olsten was not involved in the altercations between the officers and protestors, but he did help escort one of the arrested protestors away from the scene.  [Olsten's SUMF at ¶ 17; City & Hayden's SUMF at ¶ 23].  By this time, other protestors were returning to the area.  [Olsten's SUMF at ¶ 18; City & Hayden's SUMF at ¶ 25].  Among the protestors in the area were Franks and Amir Brandy.  [Olsten's SUMF at ¶¶ 18 & 27; City & Hayden's SUMF at ¶¶ 26–27, 33].  Some protestors began yelling and screaming at the officers.  [Olsten's SUMF at ¶ 19; Doc. 66, Franks' Statement of Additional Uncontroverted Material Facts ("Additional

3

SUMF") to Olsten, ¶¶ 36–37].  Officer Olsten was holding a pepper spray fogger at the time and gave protestors at least two directives to get back.  [Olsten's SUMF at ¶ 20; Olsten's Ex. F, Maverick Video, 00:01:22:00–00:01:25:00].  Other officers gave similar directives.  [Id. at 00:01:17:00–00:01:25:00].

As the officers escorted the arrested protestor away, Brandy followed and yelled: "Put that s*** in my face, I'm going to f*** you up."  [Franks' Additional SUMF to Olsten at ¶¶ 76–77, 80–81].  At one point, Officer Olsten stepped toward Brandy and responded: "Come and f*** me up then, dude."  [Olsten's SUMF at ¶ 29; Franks' Additional SUMF to Olsten at ¶¶ 52 & 78; Doc. 68, Franks' Additional SUMF to City & Hayden, ¶¶ 23, 104–05].  Two officers put their hands on Officer Olsten at that point to keep him moving.  [Franks' Additional SUMF to City & Hayden at ¶¶ 24 & 106].  Brandy continued yelling at Officer Olsten, saying, among other things: "Put that s*** in my face, and I'll f*** you up."  [Maverick Video at 00:01:19:00–00:01:38:00].  Before handing the arrested protestor off to other officers, Officer Olsten told Brandy to "keep coming" and waved him forward with his pepper spray fogger.  [Franks' Additional SUMF to Olsten at ¶ 82; Franks' Additional SUMF to City & Hayden at ¶¶ 25 & 108].

After Officer Olsten handed the arrested protestor off, he remained in the area.  [City & Hayden's SUMF at ¶ 24].  Sergeant Eric Bartlett and Commissioner Hayden were also in the area at the time.  [Franks' Additional SUMF to City & Hayden at ¶

27].  By this point, Brandy had stopped moving toward Officer Olsten.  [Id. at ¶ 107].  The parties dispute the exact distance that remained between Brandy and Officer Olsten.  See [City & Hayden's SUMF at ¶ 33; Doc. 68, Franks' Resp. to City & Hayden's SUMF, ¶ 33].  However, video evidence shows that Brandy and Officer Olsten were only a few feet apart and standing face-to-face.  [Olsten's Ex. H, De Mian Video, 00:01:19:00–00:01:24:00].  Brandy and Officer Olsten were standing so close to one another, in part, because Officer Olsten had walked toward Brandy after handing the arrested protestor off.  [Id. at 00:01:15:00–00:01:19:00].

While Brandy and Officer Olsten stood face-to-face, they continued to engage with one another.  Brandy once again said: "Put that s*** in my face."  [Maverick Video at 00:01:43:00–00:01:45:00].  Officer Olsten responded: "Dude, back up."  [Olsten's SUMF at ¶ 31; Maverick Video at 00:01:44:00–00:01:45:00].  Brandy also called Officer Olsten a "p**** a** white boy."  [Olsten's SUMF at ¶ 27; Maverick Video at 00:01:47:00–00:01:48:00].  Another protestor, Rasheen Aldridge, had walked up to Officer Olsten by this point and questioned him about the earlier use of a taser on the arrested protestor.  [Franks' Additional SUMF to Olsten at ¶ 87].  Officer Olsten responded: "I didn't tase him."  [Id.]

As Brandy and Aldridge engaged with Officer Olsten, a female protestor yelled something from the crowd.  According to Defendants, the protestor yelled: "Shoot this motherf***er."  [Olsten's SUMF at ¶ 34; City & Hayden's SUMF at ¶

5

31].   According to Franks, the protestor yelled: "Shut this motherf\*\*\*er down."
[Doc. 66, Franks' Resp. to Olsten's SUMF, ¶ 34; Franks' Resp. to City & Hayden's
SUMF at ¶ 31].   In either case, immediately thereafter, Officer Olsten deployed
pepper spray toward the protestors for several seconds as he walked in their
direction.   [Olsten's SUMF at ¶ 35; City & Hayden's SUMF at ¶¶ 32, 41; Franks'
Additional SUMF to Olsten at ¶¶ 88 & 91].

At the time that the female protestor yelled something from the crowd, Franks
was standing near Brandy and was recording the scene.   [Olsten's SUMF at ¶ 36;
City & Hayden's SUMF at ¶ 33; Franks' Additional SUMF to Olsten at ¶ 48; Franks'
Additional SUMF to City & Hayden at ¶ 123].   The parties dispute the exact distance
between Brandy and Franks at the time.   See [Olsten's SUMF at ¶ 28; Franks' Resp.
to Olsten's SUMF at ¶ 28; Franks' Additional SUMF to Olsten at ¶ 93; Doc. 77,
Olsten's Resp. to Franks' Additional SUMF, ¶ 93].   But video evidence shows that,
in the moments leading up to Officer Olsten's deployment of pepper spray, Franks
was standing several feet behind Brandy.   [De Mian Video at 00:01:27:00–
00:01:30:00].   Although Franks never touched, assaulted, or threatened any officer,
she was nevertheless among the protestors pepper sprayed.   [Franks' Additional
SUMF to City & Hayden at ¶¶ 123–25].

After Officer Olsten deployed pepper spray, none of the protestors who were
affected were arrested.   [Franks' Additional SUMF to Olsten at ¶ 66].   Nor did

Officer Olsten or other officers attempt to make any arrests. [Id. at ¶ 98]. Commissioner Hayden was the scene commander at the time because he was the highest-ranking officer on the scene. [Olsten's SUMF at ¶ 6; Franks' Additional SUMF to Olsten at ¶ 2. Commissioner Hayden was standing near Officer Olsten when he deployed pepper spray but had his back turned. [City & Hayden's SUMF at ¶¶ 36–37; Franks' Additional SUMF to Olsten at ¶ 60; Franks' Additional SUMF to City & Hayden at ¶ 114]. Commissioner Hayden did not give Officer Olsten or any other officer an order to deploy pepper spray. [City & Hayden's SUMF at ¶ 34].

Franks filed this lawsuit on September 30, 2019, against Defendants for their roles in Officer Olsten's use of pepper spray against her during the protest on September 29, 2017. Franks' complaint initially contained six counts: (Count I) against Officer Olsten and Commissioner Hayden for violating her First Amendment rights; (Count II) against the City for municipal liability under § 1983; (Count III) against Defendants for negligent infliction of emotional distress under Missouri law; (Count IV) against Officer Olsten for excessive force in violation of the Fourth Amendment; (Count V) against Commissioner Hayden for failure to intervene in violation of the Fourth Amendment; and (Count VI) against Defendants for battery under Missouri law. [Doc. 1, Compl.]. Count III was dismissed without prejudice on July 1, 2021, upon the parties' stipulation of dismissal. [Docs. 47–48].

Officer Olsten filed a crossclaim in this lawsuit against the City for reimbursement of all expenses and attorneys' fees incurred by him in defending against Franks' claims and payment of any damages and costs awarded to Franks. [Doc. 18].  In his crossclaim, Officer Olsten alleged that the City was obligated to defend him against Franks' claims and indemnify him against any damages awarded to Franks pursuant to City Ordinance § 3.10.040(H) and SLMPD Special Order 3-05, § XXII(A).  Officer Olsten filed an amended crossclaim on September 17, 2021, adding a third basis for the City's obligation to defend and indemnify him: Mo. Rev. Stat. § 590.502.7.  [Doc. 53].

## LEGAL STANDARDS

### *Summary Judgment*

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, I must "'view the evidence in the light most favorable to the opposing party' and draw all reasonable inferences in favor of that party."  Cox v. First Nat. Bank, 792 F.3d 936, 938 (8th Cir. 2015) (quoting Tolan v. Cotton, 572 U.S. 650, 657 (2014)).  The movant bears the initial burden of informing me of the basis for its motion and identifying the portions of the record it believes show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Upon a properly supported motion, the opposing

8

party "must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" Togerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting Celotex, 477 U.S. at 324).

### *Qualified Immunity*

Qualified immunity shields government officials from liability under 42 U.S.C. § 1983 unless the official's conduct violated a "clearly established constitutional or statutory right of which a reasonable person would have known." Burbridge v. City of St. Louis, 2 F.4th 774, 780 (8th Cir. 2021) (internal quotation marks omitted).  Determining whether an official is entitled to qualified immunity entails a two-part inquiry: "(1) whether the facts taken in a light most favorable to the plaintiff make out a violation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the defendant's alleged misconduct."  Id. (internal quotation marks omitted).  An official is entitled to qualified immunity unless the answer to both questions is yes.  Id.

To be clearly established, the "'contours of the right must be sufficiently clear'" such that a reasonable official would have understood that what he was doing violated the right.  Quraishi v. St. Charles Cnty., 986 F.3d 831, 835 (8th Cir. 2021) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  This requires "'precedent,' 'controlling authority,' or a 'robust consensus of cases of persuasive authority.'"  Id. (quoting District of Columbia v. Wesby, 138 S.Ct. 577, 591 (2018)).

9

There may also be the "'rare obvious case'" where the unlawfulness of an official's conduct was sufficiently clear "'even though existing precedent did not address similar circumstances.'" Id. (quoting Wesby, 138 S.Ct. at 590).

## DISCUSSION

Before me are two motions for summary judgment: Officer Olsten's motion for summary judgment, [Doc. 58], and the City and Commissioner Hayden's motion for summary judgment, [Doc. 62].  Officer Olsten requests that I grant summary judgment in his favor on all claims asserted against him by Franks and on his crossclaim against the City.  The City and Commissioner Hayden request that I grant summary judgment in their favor on all claims asserted against them by Franks.  In addressing Defendants' motions, I will discuss Franks' federal law claims, then turn to Franks' supplemental state law claims and Officer Olsten's crossclaim.

## I.   Franks' Federal Law Claims

### A.   Count I – First Amendment Retaliation

In Count I, Franks asserts claims against Officer Olsten and Commissioner Hayden under § 1983 for violating her First Amendment rights.  In her complaint, Franks essentially alleges that Officer Olsten pepper sprayed her in retaliation for exercising her First Amendment rights to associate freely in public, express her views as part of a peaceful demonstration, and gather information regarding a matter of public interest.  [Compl. at ¶¶ 55, 57–63, 86, 88].  Franks alleges that

10

Commissioner Hayden, Officer Olsten's supervisor at the time, was standing near Officer Olsten when he pepper sprayed her but took no steps to prevent him from doing so.  [Id. at ¶¶ 56 & 58].

### 1.    *Officer Olsten*

Officer Olsten contends that summary judgment should be entered in his favor on Franks' First Amendment retaliation claim because he is entitled to qualified immunity.  Officer Olsten argues that he is entitled to qualified immunity because Franks' claim is based on his alleged use of excessive force and there is insufficient evidence to support a finding that he used excessive force.  In Officer Olsten's view, the evidence is insufficient to support such a finding because there is no evidence that he intended to pepper spray Franks individually.  Officer Olsten also argues that he did not violate a clearly established right.

In her opposition, Franks argues that Officer Olsten is not entitled to qualified immunity because a reasonable jury could find that he pepper sprayed her in a gratuitous and punitive manner for exercising her First Amendment rights.  Franks argues that a jury could conclude that Officer Olsten's use of pepper spray was unnecessary and excessive because, when she was pepper sprayed, she was peacefully protesting and not acting in a threatening or violent manner.  Franks also cites several cases to show that her First Amendment rights were clearly established at the time of Officer Olsten's alleged misconduct.

11

An individual's right to exercise First Amendment rights without facing retaliation from government officials was clearly established in 2017, as the issue was addressed by the Eighth Circuit in 2010.  See Baribeau v. City of Minneapolis, 596 F.3d 465, 481 (8th Cir. 2010) (quoting Kilpatrick v. King, 499 F.3d 759, 767 (8th Cir. 2007)) ("A citizen's right to exercise First Amendment freedoms 'without facing retaliation from government officials is clearly established.'").  As a result, the question here is whether a reasonable jury could find that Officer Olsten violated this right when he deployed pepper spray during the protest on September 29, 2017.

To establish a claim for First Amendment retaliation, a plaintiff must show: "(1) [she] engaged in a protected activity, (2) the government official took adverse action against [her] that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity."  Peterson v. Kopp, 754 F.3d 594, 602 (8th Cir. 2014) (internal quotation marks omitted).  The third element requires a plaintiff to "present evidence of a causal connection between the constitutionally protected activity and the adverse action."  Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004).  A plaintiff must show that "the retaliatory motive was a 'substantial factor' or 'but-for cause' of the adverse action."  Peterson, 754 F.3d at 602.  This requires a showing that the plaintiff was "'singled out because of [her] exercise of constitutional rights.'"  Id. (quoting Baribeau, 596 F.3d at 481).

12

As an initial matter, I note that, although Franks states that her claim is based on Officer Olsten's use of excessive force, the issue presented is not whether Officer Olsten's deployment of pepper spray constituted "excessive force" as that phrase is understood in the Fourth Amendment context.[3]  This is because "retaliatory conduct does not itself need to be a constitutional violation in order to be actionable."  Cody v. Weber, 256 F.3d 764, 771 (8th Cir. 2001).  "[T]he violation is acting in retaliation for 'the exercise of a constitutionally protected right.'"  Spencer v. Jackson Cnty., 738 F.3d 907, 911 (8th Cir. 2013) (quoting Cody, 256 F.3d at 771).  Therefore, with respect to Franks' First Amendment retaliation claim, I need not determine whether Officer Olsten's deployment of pepper spray constituted excessive force.  I must only determine whether a reasonable jury could find that: (1) Franks engaged in protected activity, (2) Officer Olsten's deployment of pepper spray was an adverse action taken against Franks that would deter an ordinary person from continuing in protected activity, and (3) Officer Olsten's deployment of pepper spray was motivated at least in part by Franks' exercise of protected activity.

The parties have presented very little evidence of what Franks was doing in the moments leading up to Officer Olsten's deployment of pepper spray.  The evidence that has been presented indicates only that Franks was standing near—and

---

[3] Franks' statement that her First Amendment retaliation claim is based on Officer Olsten's use of excessive force is understandable insofar as it clarifies that her claim is not based on a retaliatory arrest.  This clarification is important because, as Franks correctly notes, a retaliatory arrest claim requires proof of an additional element: lack of probable cause.

possibly behind—Brandy and recording the scene.  [Olsten's SUMF at ¶¶ 28, 36; City & Hayden's SUMF at ¶ 33; Franks' Additional SUMF to Olsten at ¶¶ 1, 48, 92–93; Franks' Additional SUMF at ¶ 123; De Mian Video at 00:01:27:00– 00:01:30:00].   While participating in a protest and recording police officers performing their duties in public are generally protected activities, and the use of pepper spray may be an adverse action that would deter an ordinary person from continuing in protected activity, Franks has failed to present sufficient evidence showing that Officer Olsten's deployment of pepper spray was motivated, even in part, by her exercise of these activities.

Indeed, a reasonable jury could not find that Officer Olsten's deployment of pepper spray was motivated by Franks' act of recording the scene because there is little, if any, evidence that Officer Olsten was even aware that Franks was recording the scene.  See Lozman v. City of Rivera Beach, 138 S.Ct. 1945, 1954 (2018) (stating plaintiff "likely could not have maintained a retaliation claim against the arresting officer," in part, because there was "no showing that the officer had any knowledge of [plaintiff's] prior speech").  Based on the present record, a reasonable jury could also not find that Officer Olsten's deployment of pepper spray was motivated by Franks' actions at the protest because there is no evidence that Franks was identified or targeted by Officer Olsten.  See Quraishi, 986 F.3d at 838 (noting plaintiffs "were singled out—other people were in their immediate area but only [plaintiffs] were

14

tear-gassed at the scene"); Peterson, 754 F.3d at 603 (discussing that plaintiff criticized the officer and asked for his badge number and that the officer pepper sprayed plaintiff but not others in the area); Burbridge v. City of St. Louis, 430 F.Supp.3d 595, 614 (E.D. Mo. 2019), aff'd, 2 F.4th 774 (8th Cir. 2021) (noting officers identified plaintiff before pulling him from the crowd, arresting him, and striking and kicking him to the point of unconsciousness).

Rather than showing that Officer Olsten's deployment of pepper spray was motivated by Franks' exercise of protected activity, the evidence tends to show that it was motivated instead by other protestors. For example, the evidence shows that, in the moments leading up to Officer Olsten's deployment of pepper spray, Officer Olsten engaged with Brandy and displayed some level of hostility toward him in response to his repeated confrontational statements. [Olsten's SUMF at ¶¶ 27 & 29; Franks' Additional SUMF to Olsten at ¶¶ 49, 52, 76–78, 80–82; Franks' Additional SUMF to City & Hayden at ¶¶ 23, 25, 104–05, 108; Maverick Video at 00:01:19:00– 00:01:38:00 & 00:01:43:00–00:01:48:00]. The evidence also shows that Officer Olsten deployed pepper spray immediately after the female protestor yelled something from the crowd. [Olsten's SUMF at ¶ 35; City & Hayden's SUMF at ¶¶ 32, 41; Franks' Additional SUMF to Olsten at ¶¶ 88 & 91]. Regardless of whether the female protestor yelled "[s]hoot this motherf***er" or "[s]hut this motherf***ker down," the timing of Officer Olsten's deployment of pepper spray tends to establish

15

a causal connection between the female protestor's statement and Officer Olsten's deployment of pepper spray.  See Peterson, 754 F.3d at 603 (quoting Wilson v. Northcutt, 441 F.3d 586, 592 (8th Cir. 2006)) (noting "[t]emporal proximity is relevant but no dispositive" in determining whether an official's adverse action was motivated by the plaintiff's exercise of protected activity).

Because Franks has failed to present sufficient evidence showing that Officer Olsten's deployment of pepper spray was motivated by her exercise of protected activity, Officer Olsten is entitled to qualified immunity on Franks' First Amendment retaliation claim.  Accordingly, summary judgment will be granted to Officer Olsten on Count I.

### 2. *Commissioner Hayden*

Commissioner Hayden also contends that summary judgment should be entered in his favor on Franks' First Amendment retaliation claim because he is entitled to qualified immunity.  Commissioner Hayden argues that he is entitled to qualified immunity because there is no evidence that he took any action or was otherwise personally involved in the use of force against Franks.  Commissioner Hayden asserts that he neither gave Officer Olsten an order to deploy pepper spray nor had any advanced notice that force was going to be used.  Commissioner Hayden claims that Officer Olsten deployed his pepper spray based on his personal judgment while Commissioner Hayden was dealing with a chaotic situation.

In her opposition, Franks does not specifically address Commissioner Hayden's argument regarding her First Amendment retaliation claim. Instead, Franks appears to argue in support of her First Amendment retaliation claim and failure-to-intervene claim (Count V) simultaneously. Franks notes that Commissioner Hayden was the supervisor on the scene when Officer Olsten deployed pepper spray, and she argues that Commissioner Hayden's failure to intervene and attempt to deescalate the situation amounted to tacit approval of Officer Olsten's behavior and served to encourage him. Franks claims that Commissioner Hayden failed his duty to supervise and intervene.

As discussed above, there is insufficient evidence to support a finding that Officer Olsten retaliated against Franks for exercising her First Amendment rights. For this reason alone, Franks' First Amendment retaliation claim against Commissioner Hayden fails. See Moore v. City of Desloge, 647 F.3d 841, 849 (8th Cir. 2011) (concluding plaintiff could not maintain a claim against the chief of police because he failed to establish that the inferior officer violated his constitutional rights). However, even if there were sufficient evidence to support a finding that Officer Olsten violated Franks' First Amendment rights, Commissioner Hayden would still be entitled to qualified immunity.

"Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights." Otey v. Marshall, 121 F.3d

1150, 1155 (8th Cir. 1997).  Each officer, "'his or her title notwithstanding, is only liable for his or her own misconduct.'"  Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009)).  A supervisor may be held liable for an inferior officer's constitutional violation only "'if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.'"  Id. (quoting Otey, 121 F.3d at 1155).

To establish liability for failure to supervise, a plaintiff must show that: (1) the supervisor received notice of a pattern of unconstitutional acts committed by subordinates; (2) the supervisor demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) the supervisor failed to take sufficient remedial action; and (4) the supervisor's failure proximately caused the plaintiff's constitutional deprivation.  Id. at 1002.  To establish liability for failure to train, a plaintiff must show that the supervisor's failure to train amounted to "deliberate indifference to the rights of persons with whom the police come into contact" and "actually caused" the plaintiff's constitutional deprivation.  Id.

Here, there is no evidence that Commissioner Hayden was personally involved in pepper spraying Franks, and Franks has not come forward with sufficient evidence to support a claim against him for failure to train or supervise.  With respect to failure to supervise, Franks has not cited any other incidents as evidence that Commissioner Hayden, specifically, was on notice of a pattern of unconstitutional

acts committed by his subordinates; Franks' argument regarding Commissioner Hayden focuses exclusively on the circumstances surrounding Officer Olsten's deployment of pepper spray during the protest on September 29, 2017.  Franks has also not cited any evidence regarding Commissioner Hayden's training practices or lack thereof, as required for a failure-to-train claim.  Notably, in her sole reference to Officer Olsten's training, Franks cites Sergeant Bartlett's testimony as evidence that Officer Olsten's conduct was, in fact, not in accordance with his training.  See [Franks' Additional SUMF to Olsten at ¶¶ 53 & 57].

In sum, Commissioner Hayden is entitled to qualified immunity on Franks' First Amendment retaliation claim because there is insufficient evidence to support a finding that Officer Olsten retaliated against Franks for exercising her First Amendment rights.  Even if there were sufficient evidence to support a finding that Officer Olsten violated Franks' First Amendment rights, Commissioner Hayden would still be entitled to qualified immunity because (1) there is no evidence that he was personally involved in pepper spraying Franks, and (2) Franks has not come forward with sufficient evidence to support a claim against him for failure to train or supervise.  To the extent that Franks' First Amendment retaliation claim against Commissioner Hayden is based on his alleged failure to intervene, Commissioner Hayden is entitled to qualified immunity for the additional reasons discussed in

19

section I.C.   For all of these reasons, summary judgment will be granted to Commissioner Hayden on Count I.

## B.    Count IV – Excessive Force

In Count IV, Franks asserts a claim against Officer Olsten under § 1983 for excessive force in violation of the Fourth Amendment.  Franks alleges that Officer Olsten's act of pepper spraying her constituted excessive force because it was objectively unreasonable.  [Compl. at ¶ 110].  Officer Olsten contends that summary judgment should be entered in his favor on this claim because he is entitled to qualified immunity.

To establish a Fourth Amendment violation, a plaintiff must demonstrate that "a seizure occurred and the seizure was unreasonable." Quraishi, 986 F.3d at 839 (internal quotation marks omitted).  A seizure occurs when an officer "restrains the liberty of an individual through physical force or show of authority." Id. (internal quotation marks omitted).  An officer's use of force or show of authority must have been such that "'a reasonable person would have believed that [she] was not free to leave.'" Id. (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)).  In determining whether a seizure occurred through a use of force, "the appropriate inquiry is whether the challenged conduct objectively manifests an intent to restrain." Torres v. Madrid, 141 S.Ct. 989, 998 (2021).

Here, the record does not support a finding that Franks was seized. There is no evidence that Officer Olsten ordered Franks to remain in place or that Franks was unable to leave the scene at any point. See Johnson v. City of Ferguson, 926 F.3d 504, 506 (8th Cir. 2019) (finding no seizure where plaintiff was not "ordered to stop and to remain in place" and was "able to leave the scene"). To the contrary, the evidence shows that Officer Olsten and the other officers did not attempt to make any arrests after Officer Olsten deployed pepper spray. [Franks' Additional SUMF to Olsten at ¶¶ 66, 98]. There is also no evidence indicating that Officer Olsten deployed pepper spray with an intent to restrain Franks. According to Franks, Officer Olsten deployed pepper spray in retaliation against her for exercising her First Amendment rights. According to Officer Olsten, he deployed pepper spray to stop Brandy and to disperse the protestors. [Olsten's SUMF at ¶ 35; City and Hayden's SUMF at ¶ 41]. In either case, such a use of force is not a seizure. See Torres, 141 S.Ct. at 998 (stating that force applied for any purpose other than to restrain is not a seizure).

Because Franks must show that she was seized in order to establish a claim for excessive force in violation of the Fourth Amendment, and the record does not support a finding that Franks was seized, Officer Olsten is entitled to qualified immunity on Franks' excessive force claim. Furthermore, even if the record did contain evidence of a seizure under Torres, Officer Olsten would still be entitled to

qualified immunity because it was not clearly established in 2017 that use of pepper spray alone was a seizure.  Cf. Quraishi, 986 F.3d at 840 (concluding it was not clearly established in 2014 that deploying tear-gas alone was a seizure). Accordingly, summary judgment will be granted to Officer Olsten on Count IV.

### C.    Count V – Failure to Intervene

In Count V, Franks asserts a claim against Commissioner Hayden under § 1983 for failure to intervene in violation of the Fourth Amendment.  Franks alleges that Commissioner Hayden knew or should have known that Officer Olsten posed a threat to protestors and that he would use excessive force in violation of their constitutional rights.  [Compl. at ¶ 122].  Franks alleges that Commissioner Hayden had a duty to intervene and prevent Officer Olsten from violating her constitutional rights, had sufficient time and opportunity to intervene, and failed to do so.  [Id. at ¶¶ 123–25].  Commissioner Hayden contends that summary judgment should be entered in his favor on this claim because he is entitled to qualified immunity.

"[A]n officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment."  Hollingsworth v. City of St. Ann, 800 F.3d 985, 991 (8th Cir. 2015) (internal quotation marks omitted).  The Eighth Circuit has not, however, recognized an officer's duty to intervene to prevent other constitutional violations.  Livers v. Schenck, 700 F.3d 340, 360 (8th Cir. 2012); Zorich v. St. Louis Cnty., No. 4:17-CV-

22

1522-PLC, 2018 WL 6621525, at *24 (E.D. Mo. Dec. 18, 2018).  The Eighth Circuit has also held that "there is no clearly established law regarding a duty to intervene outside of the excessive force context."  <u>Andrews v. Schafer</u>, 888 F.3d 981, 984 n. 4 (8th Cir. 2018) (citing <u>Hess v. Ables</u>, 714 F.3d 1048, 1052 (8th Cir. 2013).

As discussed above, Officer Olsten is entitled to qualified immunity on Franks' excessive force claim because the record does not support a finding that Franks was seized, and it was not clearly established in 2017 that use of pepper spray alone was a seizure.  Because a failure-to-intervene claim is dependent on an excessive force claim, Commissioner Hayden is entitled to qualified immunity on Franks' failure-to-intervene claim.  To the extent that Franks' failure-to-intervene claim is based on Commissioner Hayden's alleged failure to intervene to prevent Officer Olsten from retaliating against her in violation of the First Amendment, Commissioner Hayden is entitled to qualified immunity because there was no clearly established law regarding such a duty in 2017.  Accordingly, summary judgment will be granted to Commissioner Hayden on Count V.

### D.    Count II – Municipal Liability

In Count II, Franks asserts a claim against the City under § 1983 for municipal liability.  The Eighth Circuit "'has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim.'"  <u>Moore</u>, 647 F.3d at 849 (quoting <u>McCoy v. City of</u>

23

Monticello, 411 F.3d 920, 922 (8th Cir. 2005)).   Because Officer Olsten and Commissioner Hayden are entitled to qualified immunity and summary judgment on all constitutional claims asserted against them, the City is entitled to summary judgment on Franks' claim for municipal liability.  See Whitney v. City of St. Louis, 887 F.3d 857, 861 (8th Cir. 2018) (citing cases) ("[A]bsent a constitutional violation by a city employee, there can be no § 1983 or Monell liability for the [c]ity.").  As a result, summary judgment will be granted to the City on Count II.

## II.  **Remaining Claims**

Having determined that Defendants are entitled to summary judgment on all of Franks' federal law claims, I must consider whether to retain or decline jurisdiction over the remaining claims in this case.  The remaining claims include Franks' claims against Defendants for battery under Missouri law (Count VI) and Officer Olsten's crossclaim against the City for reimbursement of all expenses and attorneys' fees incurred by him in defending against Franks' claims and payment of any damages and costs awarded to Franks.  These claims are before me based on supplemental jurisdiction under 28 U.S.C. § 1367, which provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  § 1367(a).

24

When supplemental jurisdiction over a claim exists under § 1367(a), a district court may decline to exercise such jurisdiction in four circumstances: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the court has original jurisdiction; (3) the court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.   § 1367(c).  Because I will dismiss all claims over which I have original jurisdiction, I will decline to exercise supplemental jurisdiction over the remaining claims in this case under § 1367(c)(3).  I will also decline to exercise supplemental jurisdiction over some of the remaining claims under § 1367(c)(1) for the additional reason that they raise novel and complex issues of state law.

### A.      § 1367(c)(3)

Under § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction when it has "dismissed all claims over which it has original jurisdiction." § 1367(c)(3).  A district court's decision to exercise supplemental jurisdiction in such circumstances is "purely discretionary."  Carlsbad Tech., Inc. v. HIF BIO, Inc., 556 U.S. 635, 639 (2009).  However, "'[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'"

Barstad v. Murray Cnty., 420 F.3d 880, 888 (8th Cir. 2005) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)).

Finding no factor that distinguishes this case from the usual case in which all federal law claims are eliminated before trial, I will decline to exercise supplemental jurisdiction over the remaining claims in this case under § 1367(c)(3) and dismiss the claims without prejudice.  See Gregoire v. Class, 236 F.3d 413, 419–20 (8th Cir. 2000) (quoting ACLU v. City of Florissant, 186 F.3d 1095, 1098–99 (8th Cir. 1999)) ("'[W]hen state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law as a matter of comity.'").

**B.      § 1367(c)(1)**

Although § 1367(c)(3) provides a sufficient basis for declining to exercise supplemental jurisdiction over the remaining claims in this case, I note that § 1367(c)(1) provides an additional basis for declining to exercise supplemental jurisdiction over some of the remaining claims.  Under § 1367(c)(1), a district court may decline to exercise to supplemental jurisdiction over a claim if "the claim raises a novel or complex issue of [s]tate law." § 1367(c)(1).  Here, two of the remaining claims raise novel and complex issues of state law: Franks' claim for battery against the City and Officer Olsten's crossclaim against the City.

26

Franks' claim for battery against the City raises novel and complex issues of state law regarding sovereign immunity.  In Missouri, municipalities are generally entitled to sovereign immunity while engaged in governmental functions.  See Southers v. City of Farmington, 263 S.W.3d 603, 609 (Mo. banc 2008).  A municipality may waive sovereign immunity, however, by "purchasing insurance or adopting a self-insurance plan." Hendrix v. City of St. Louis, 636 S.W.3d 889, 900 (Mo. Ct. App. 2021).  Franks alleges that the City waived sovereign immunity on her claim by obtaining insurance from the Public Facilities Protection Corporation (the "PFPC").  [Compl. ¶ 137].  Franks also alleges that the City waived sovereign immunity because its relationship with the PFPC serves as a self-insurance plan. [Id. at ¶ 138].  It appears that, to date, only one Missouri appellate court has addressed the issue of whether the City waived sovereign immunity through the PFPC.  See Hendrix, 636 S.W.3d at 900–01 (affirming circuit court's grant of summary judgment to the City on the grounds that the City had not waived sovereign immunity on plaintiff's negligent supervision and training claims).

Officer Olsten's crossclaim against the City raises novel and complex issues of state law regarding, among other things, the constitutionality of Mo. Rev. Stat. § 590.502.7.  Officer Olsten cites § 590.502.7 as a basis for his crossclaim.  The statute provides that "[e]mployers shall defend and indemnify law enforcement officers from and against the civil claims made against them in their official and individual

27

capacities if the alleged conduct arose in the course and scope of their obligations and duties as law enforcement officers." § 590.502.7. The City argues that § 590.502.7 is unconstitutional because Missouri Senate Bill No. 26—the bill a part of which the statute was enacted—violates article III, sections 21 and 23 of the Missouri Constitution. The City also argues that § 590.502.7 is unconstitutional because it violates article VI, section 2 and article III, section 38(a) of the Missouri Constitution. Section 590.502.7 took effect on August 28, 2021. Because the statute was so recently enacted, it has not been interpreted by Missouri appellate courts, and its constitutionality has not been addressed.

Federal courts should be hesitant to exercise supplemental jurisdiction over novel, complex, and important issues of state law on which the state appellate courts have provided little or no guidance. Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1038 (8th Cir. 1999). Because Missouri appellate courts have provided little or no guidance on the novel, complex, and important issues of state law in this case related to sovereign immunity and the constitutionality of Mo. Rev. Stat. § 590.502.7, I will decline to exercise supplemental jurisdiction over Franks' claim for battery against the City and Officer Olsten's crossclaim against the City under both 28 U.S.C. § 1367(c)(1) and (c)(3).

## CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment will be granted in part and denied in part without prejudice.  The motions will be granted as to Franks' federal law claims in Counts I, II, IV, and V and denied without prejudice in all other respects.  Franks' federal law claims will be dismissed with prejudice.  Pursuant to 28 U.S.C. § 1367(c)(1) and (c)(3), I will decline to exercise supplemental jurisdiction over the remaining claims in this case—Franks' claims for battery against Defendants (Count VI) and Officer Olsten's crossclaim against the City—and I will dismiss those claims without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant/Cross-Claimant William Olsten's motion for summary judgment [58] is **GRANTED** in part and **DENIED** in part without prejudice.  The motion is granted as to Plaintiff Jazmin Franks' First and Fourth Amendment claims against Defendant/Cross-Claimant William Olsten, as set out in Counts I and IV.  These claims are **DISMISSED** with prejudice.  The motion is denied without prejudice in all other respects.

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by Defendant/Cross-Defendant City of St. Louis, Missouri, and Defendant John Hayden [62] is **GRANTED** in part and **DENIED** in part without prejudice.  The motion is granted as to Plaintiff Jazmin Franks' First and Fourth Amendment claims

29

against Defendant John Hayden, as set out in Counts I and V, and Plaintiff' Jazmin Franks' claim for municipal liability against Defendant/Cross-Defendant City of St. Louis, Missouri, as set out in Count II.   These claims are **DISMISSED** with prejudice.  The motion is denied without prejudice in all other respects.

**IT IS FURTHER ORDERED** that supplemental jurisdiction under 28 U.S.C. § 1367 is declined over the remaining claims in this case: Plaintiff Jazmin Franks' claims against Defendants for battery under Missouri law, as set out in Count VI, and Defendant/Cross-Claimant William Olsten's crossclaim against Defendant/Cross-Defendant City of St. Louis, Missouri.   These claims are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that all other pending motions in this case are **DENIED** as moot.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.


RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE


Dated this 8th day of April 2022.

30